19 P.3d 66

**STATE of Idaho, Plaintiff–Respondent.**

v.

**Andres Fernando BELLO aka Fernando Bello, Fernando Solo, Jose Antonio Moya, Defendant–Appellant.**

No. 26105.

Court of Appeals of Idaho.

Jan. 24, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

This is a sentence review. In September 1999, Andres Fernando Bello was found guilty by a jury of eleven counts of lewd and lascivious conduct with a child, and seven counts of sexual battery on a minor. I.C. §§ 18–1508 and 18–1508A. Bello was sentenced to an aggregate unified life term, with a minimum period of confinement of eighty years.[1] On appeal, Bello argues that the sentences are unduly harsh. Specifically, Bello challenges the consecutive nature of the individual sentences, not the length of any particular sentence.

---

1. On each of the eighteen counts, the district court sentenced Bello to a unified term of life, with a minimum period of confinement of twenty years. The district court ordered that: (1) the sentences for counts 1 to 5 would run concurrent with each other; (2) the sentences for counts 6 to 12 would run concurrent with each other and consecutive to sentences for counts 1 to 5; (3) the sentences for counts 16 to 19 would run concurrent with each other and consecutive to the sentences for counts 1 to 12; and (4) the sentences for counts 20 to 21 would run concurrent with each other and consecutive to the sentences for counts 1 to 12 and counts 16 to 19.

■ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

■ Bello was thirty-six years old at the time of sentencing. Given eighty years of actual incarceration, Bello will effectively spend the rest of his life in prison. A fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. *State v. Li*, 131 Idaho 126, 129, 952 P.2d 1262, 1265 (Ct.App. 1998); *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct.App.1988). A fixed life sentence for lewd and lascivious conduct "requires a high degree of certainty that the perpetrator could never be safely released back into society or that the nature of the offense requires that the individual spend the rest of his life behind bars." *State v. Cross*, 132 Idaho 667, 672, 978 P.2d 227, 232 (1999) (affirming fixed life sentence for lewd and lascivious conduct). Life sentences for lewd and lascivious conduct have been upheld where the defendant's conduct was violent, repetitive, very cruel, or life threatening. *Id.*

The record in this case reveals that Bello was born in Bogota, Columbia. He entered the United States in 1985 to seek employment. Thereafter, he became involved in the drug culture as a translator for a drug dealer who was an acquaintance from Columbia. He was convicted in federal court on five counts of aggravated trafficking and was sentenced to concurrent sentences of life, with 15 years fixed. Bello was granted an early release after cooperating with federal officials. Upon his release, Bello relocated to Boise as part of a witness protection program. Later, Bello sexually assaulted four victims starting in January 1995 and continuing to November 1997. This abuse included numerous acts of sexual intercourse, fondling or oral sex with girls ranging in age from thirteen to seventeen. In certain instances, Bello engaged some of the victims in group sex or videotaped the sexual assault.

According to the pre-sentence investigation report (PSI), some of the victims were residents of the Challenge Group Home for troubled teens where Bello had been employed. One victim was taken in by Bello as a foster child, and another victim married Bello when she was sixteen and Bello fathered her child. As noted by the district court, these victims were among the most vulnerable group of girls that Bello could prey on sexually. As a group, they were more likely to have been previously sexually abused, acted out criminally, been placed in either foster or residential care, and would be less likely to be believed if they reported the abuse to authorities. In each instance, Bello violated his position of trust, as a foster parent or child-care worker, to manipulate the victim into having sexual relations with him. Bello exploited his position of authority in order to victimize the girls. After learning that he may be arrested for sexually abusing minors, Bello decided to take a "previously planned vacation" and traveled to Florida. While in Florida, Bello was charged with being a fugitive from justice and was later arrested and extradited back to Idaho.

The district court noted that the evidence presented at trial showed that Bello was involved in many additional sexual acts with

underage females. The district court also noted that Bello expressed no remorse for his conduct and refused to admit any wrongdoing except with respect to having premarital sex with the sixteen-year-old female he later married. The PSI revealed that Bello claimed that his convictions were a result of the seductive manner in which he taught the victims to dance, the mental instability of the victims, and the victims' troubled lives. He repeatedly referred to the victims as "liars" throughout this matter. Bello also accused the victims of blaming him for sexual acts committed upon them by other men. Because Bello denied his culpability, the district court concluded that Bello remained unreceptive to rehabilitation and presented a continued threat to society. The evidence before the district court supported this conclusion.

The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel,* 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson,* 124 Idaho 179, 857 P.2d 658 (Ct.App.1993). The issue before this Court is not whether the sentence is one that we would have imposed, but whether the sentence is plainly excessive under any reasonable view of the facts. *Toohill,* 103 Idaho at 568, 650 P.2d at 710. If reasonable minds might differ as to whether the sentence is excessive, we are not free to substitute our view for that of the district court. *Id.* Having thoroughly reviewed the record in this case, we cannot say that the district court abused its discretion.

Finally, Bello argues that the district court abused its discretion in ordering that his sentences run consecutive to his sentence for an unrelated federal offense. Bello's point is well taken. We glean from the record that at the time of his sentencing in the present case, Bello was on probation in federal court for an offense committed in Ohio. It was apparently assumed by the district court and both parties that Bello's federal probation would be revoked due to the convictions in this case and that he would have to serve a term of incarceration. However, as of his sentencing hearing in the present case, his federal probation apparently had not been revoked. In our view, it was beyond the scope of the district court's authority to order that the Idaho sentences run consecutive to the Federal sentence, which was at that time a sentence of probation, not one of imprisonment.

The operative statute is I.C. § 18–308 which provides, in part, that when a person has been convicted of two or more crimes "the imprisonment to which he is sentenced upon the second or other subsequent conviction, in the discretion of the court, may commence at the termination of the first term of *imprisonment.*" (Emphasis added.). Thus, under this statute, a sentence of imprisonment can be made to run consecutive only to an earlier term of imprisonment. The statute does not authorize a sentencing court to order a term of imprisonment to run consecutive to a term of probation. It may have been the district court's intent to make the consecutiveness of the Idaho sentences conditional upon the subsequent revocation of Bello's federal probation.[2] However, we do not perceive that a conditional sentence of this type is authorized by Idaho law. Accordingly, we modify Bello's sentences to remove the provision that his sentences must be served consecutive to his federal probation.

Bello's sentences are hereby modified to delete the provision calling for the sentence to be served consecutive to his federal sentence. Bello's judgments of conviction and sentences are in all other respects affirmed.

Chief Judge SCHWARTZMAN and Judge LANSING concur.

2. We note that at the conclusion of the sentencing hearing the district court stated that the sentences would be "consecutive with any prior sentence."